## *In re* RUDOLPH.

*(Circuit Court, D. Nevada.* March, 1880.)

TRAVELING MERCHANTS—LICENSE TAX—SUBD. 2, § 10, ART. 1, AND SUBD. 3, § 8, ART. 1, OF THE CONSTITUTION.—A statute of Nevada provided that "every traveling merchant, agent, drummer or other person selling, or offering to sell, any goods, wares or merchandise of any kind, to be delivered at some future time, or carrying samples and selling, or offering to sell, goods, wares or merchandise of any kind similar to such samples, to be delivered at some future time," should obtain a license, and pay $25 a month for the same. The statute further provided that any person without such license, "so offering any goods, wares or merchandise for sale, shall be guilty of a misdemeanor, and on conviction shall be fined in any sum not less than $50 nor more than $500." *Held,* (1) that said statute did not violate subd. 2, § 10, art. 1 of the constitution, prohibiting the states from laying imposts or duties on imports; (2) that such statute did not violate subd. 3, § 8, art. 1 of the constitution, conferring upon congress power to "regulate commerce among the several states."

*Lewis & Deal,* for petitioner.

*Attorney General Murphy,* for respondent.

SAWYER, C. J.   The petitioner is a citizen of California, and in the employment of Adelsdufer & Co., merchants of San Francisco, California, engaged in the coffee and spice trade. He was traveling is Nevada, engaged in such employment, offering to sell and selling such goods, wares and merchandise as his employers dealt in.   Upon making sales he transmitted the orders to said employers in San Francisco, who filled them and shipped the goods sold to the parties ordering them, at their respective places of business in Nevada.   For selling goods in the course of said employment at Virginia City, Nevada, he was arrested and held in custody upon a warrant issued upon a charge of having committed the offence of pursuing such business without having procured a license as required by the statute of Nevada, passed February 20, 1877, (St. 1877–79.)

A writ of *habeas corpus* having been issued and the body of the prisoner produced, he now asks to be discharged from custody on the ground that said act is void, as being in violation of subdivision 3, section 8, article 1, of the Constitution of the United States, conferring upon congress power to "regu-

late commerce among the several states;" also, of section **10,** subdivision 2, of the same article, prohibiting the states from laying imposts or duties on imports.

The statute of Nevada in question provides that "every traveling merchant, agent, drummer or other person selling, or offering to sell, any goods, wares or merchandise of any kind, to be delivered at some future time, or carrying samples and selling, or offering to sell, goods, wares or merchandise of any kind similar to such samples, to be delivered at some future time," shall obtain a license, and pay for such license $25 per month. It further provides that any person without a license, "so offering any goods, wares or merchandise for sale, shall be guilty of a misdemeanor, and on conviction shall be fined in any sum not less than $50 nor more than $500."

It is settled in the case of *Woodruff* v. *Parham,* 8 Wall. 123, that the word "imports," as used in subdivision 2, section 10, of article 1, of the Constitution, does not apply to goods brought from one state into another, but is limited to goods brought into the United States from some foreign country. The statute of Nevada, therefore, does not violate that provision of the constitution.

We think, also, that the same case and the following case in the same volume (*Hinson* v. *Lott,* Id. 148) determine the other question raised, and that the statute of Nevada in question does not violate the constitutional provision conferring upon congress the power to regulate commerce among the states. Conceding, for the purpose of the decision, the license fees to be a tax upon the goods sold, there is no discrimination against the goods of other states in favor of the products of Nevada; but all are taxed alike, and under those authorities where there is no discrimination the imposition of the tax is a legitimate exercise of the taxing power by the state.

In *Woodruff* v. *Parham,* 8 Wall. 140, the court say: "The case before us is a simple tax on sales of merchandise, imposed alike upon all sales made in Mobile, whether the sales be made by a citizen of Alabama or of another state, and whether

the goods sold are the produce of that state or some other. There is no attempt to discriminate injuriously against. the products of other states or the rights of their citizens, and the case is not, therefore, an attempt to fetter commerce among the states, or to deprive the citizens of other states of any privilege or immunity possessed by citizens of Alabama. But a law having such operation would, in our opinion, be an infringement of the provisions of the constitution which relate to those subjects, and therefore void." And in *Hinson* v. *Lott*, Id. 152, the court say: "The tax in the case before us, if it were of the character we have suggested, discriminating ad-versely to the products of all the other states in favor of those of Alabama, and involving a principle which might lead to actual commercial non-intercourse, would, in our opinion, belong to that class of legislation, and be forbidden by the clause of the constitution just mentioned. But a careful examination of the statute shows that it is not obnoxious to this objection. A tax is imposed by the previous sections of the same act of 50 cents per gallon on all whisky and all brandy from fruits manufactured in the state. In order to collect this tax every distiller is compelled to take out a license, and to make regular returns of the amount of distilled spirits manufactured by him. In this way he pays 50 cents per gallon. So that, when we come in the light of these earlier sections of the act to examine the thirteenth, fourteenth and fifteenth sections, it is found that no greater tax is laid on liquors brought into the state than those manufactured within it. And it is clear that whereas collecting the tax of the distiller was supposed to be the most expedient mode of securing its payment, as to liquors manufactured within the state, the tax on those who sold liquors brought in from other states was only the complementary provision necessary to make the tax equal on all liquors sold in the state. As the effect of the act is such as we have described, and it institutes no legislation which discriminates against the products of sister states, but merely subjects them to the same rate of taxation which similar articles pay that are manufactured within the state, we do not see in it an attempt to regulate com-

merce, but an appropriate and legitimate exercise of the tax-ing power of the states."

In all the cases cited on behalf of the petitioner, from *Brown* v. *Maryland* down, there was discrimination, and the discrimination was referred to as the obnoxious feature of the statute in question in the various cases. This is the dis-tinction taken between that class of cases and those cited in this opinion; expressly taken in *Welton* v. *Missouri*, 1 Otto, 282; 3 Cent. Law Journal, 116; and again recognized in *Cook* v. *Pennsylvania*, 7 Otto, 573, as well as in other cases. The statute of Nevada makes no reference whatever to foreign goods from or the products of other states. It simply imposes a license tax upon the occupation of all traveling merchants, agents, drummers, or other persons selling or offering to sell goods of any description without reference to when or where they were made. The act we think valid, and that the peti-tioner is not restrained in violation of the constitution or laws of the United States. It is therefore ordered that the peti-tioner be remanded to the custody of the proper officer, and the writ be discharged.

HILLYER, J., concurred.